FILED

November 12, 2015

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 7:15 AM



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT COOKEVILLE BY INTERCHANGE

| | | |
|---|---|---|
| Sharon Glover, | ) | Docket No.: 2015-06-0165 |
| **Employee,** | ) | |
| v. | ) | State File No.: 92319-2014 |
| | ) | |
| Vanderbilt Medical Center | ) | Judge Robert Durham |
| **Employer,** | ) | |

## EXPEDITED HEARING ORDER DENYING BENEFITS
### (RECORD REVIEW ONLY)

THIS CAUSE came before the undersigned Workers' Compensation Judge upon the Request for Expedited Hearing (REH) filed by the Employee, Sharon Glover, on October 22, 2015, pursuant to Tennessee Code Annotated section 50-6-239 (2014) to determine if the Employer, Vanderbilt Medical Center (Vanderbilt), is obligated to provide medical benefits. Pursuant to Rule 0800-02-21-.02(13) (2015) of the Tennessee Compilation Rules and Regulations, Ms. Glover requested the Court issue a ruling based on a review of the file without an evidentiary hearing. Vanderbilt voiced no objection. Considering the positions of the parties, the applicable law, and all of the evidence submitted, the Court concludes it needs no further information to render judgment.

The sole issue is whether Vanderbilt must pay for Ms. Glover's chiropractic treatment. The Court finds Ms. Glover failed to establish the chiropractic treatment was reasonable and necessary for any injury sustained in her work-related fall on November 4, 2014. Therefore, the Court denies her request for workers' compensation benefits.[1]

## History of Claim

Ms. Sharon Glover is a fifty-two-year-old resident of Dickson County, Tennessee, who worked as a medical lab scientist for Vanderbilt. (Ex. 7.) On November 14, 2014, the floor drain in the lab where she was working backed up, and approximately two inches of water rose from the drain onto the floor. (Ex. 1 at 2.) Ms. Glover put down

---

[1] Additional information regarding the technical record and exhibits is attached to this Order as an Appendix.

1

absorbent pads to stop the water from leaking into other rooms. *Id.* As she showed the leak to a manager, her feet slipped on an absorbent pad. She twisted and fell on her buttocks and low back. *Id.*

After rinsing off and changing into scrubs, Ms. Glover walked to Vanderbilt Occupational Health Clinic (VOHC) for treatment. *Id.* While there, Vanderbilt presented Ms. Glover with an Employee's Choice of Physician form, and she chose VOHC as her authorized treating physician. (Ex. 5.) Alice Warren, nurse practitioner, examined Ms. Glover, and noted she complained of low back pain that radiated to her upper back. (Ex. 7.) N.P. Warren also noted Ms. Glover had suffered from low back pain in the past and undergone injections to manage it. *Id.* She diagnosed Ms. Glover with a "right sacroiliac joint strain" and "chronic back pain." *Id.* N.P. Warren prescribed ice and Tylenol, and released her to return to work without restrictions. *Id.*

Ms. Glover returned to VOHC on November 21. She reported pain in her back from her upper shoulder to her lumbar area. (Ex. 7 at 2.) She stated the pain worsened three days earlier after standing for an extended period at her husband's shop. *Id.* In her affidavit, Ms. Glover testified she told N.P. Warren that her back pain was not improving, and her extensive use of a heating pad made lines on her back. (Ex. 1 at 2.) N.P. Warren assessed Ms. Glover with resolving contusions to her back and buttocks. She prescribed Tylenol and released her back to work without restrictions. *Id.*

Ms. Glover did not return to VOHC, but instead sought chiropractic treatment from Dr. Jason Crist on February 12, 2015. (Ex. 8 at 2.) She complained of mid and low back pain, and reported her symptoms began after falling on a wet floor at work. *Id.* X-rays revealed mild to moderate degenerative changes at L5-S1 and "vertebral rotation" at the L2-L4 vertebral segments. (Ex. 8 at 1.) On examination, Dr. Crist noted moderate to severe muscle spasms in the lumbar and sacroiliac regions. (Ex. 8 at 4.) He recommended chiropractic treatment three times a week for three weeks, and twice a week for the next two weeks. *Id.*

On February 25, Ms. Glover contacted Tracy Woodard, Senior Claim Supervisor with Vanderbilt Risk and Insurance Management, and requested additional medical care for her back. (Ex. 1 at 3.) The next day, Ms. Glover sent an email to Ms. Woodard requesting the names of the panel doctors they had discussed. (Ex. 6 at 2.) Ms. Woodard responded that she had reviewed the VOHC records, which indicated she had prior back problems and her pain worsened while standing in her husband's shop.

Based on those facts, Ms. Woodard stated: "I spoke with my supervisor and based on the information we have – we are unable to pay for any further treatment. You would need to continue your treatment under your private insurance. You may contact the TDOL if you do not agree with this decision." (Ex. 6 at 1.)

Following Vanderbilt's denial, Ms. Glover continued to receive chiropractic treatment from Dr. Crist. (Ex. 8 at 7-15.) While the record does not contain any additional notes from Dr. Crist, there are bills evidencing multiple visits from February 27 through September 30. *Id.*

Ms. Glover filed a Petition for Benefit Determination (PBD) on March 25, 2015. (T.R. 1.) On April 21, during the mediation process, Vanderbilt's counsel informed the Mediating Specialist that, while Vanderbilt refused to pay Ms. Glover's chiropractic bills, it would approve a return visit to VOHC. (Ex. 11.) The parties were unable to reach a mediated agreement, and the Mediating Specialist filed a Dispute Certification Notice (DCN) on April 29, 2015. (T.R. 2.)

On October 22, 2014, Ms. Glover filed a Request for Expedited Hearing (REH) seeking a decision on record review. (T.R. 4.) Ms. Glover contends Dr. Crist treated her for injuries from her November 14, 2014 work-related fall, and she is therefore entitled to payment for this treatment. Vanderbilt asserts Dr. Crist provided unauthorized medical care, and the Workers' Compensation Law creates no obligation to pay for it.

### Findings of Fact and Conclusions of Law

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2014). The employee in a workers' compensation claim has the burden of proof on all essential elements of a claim. *Tindall v. Waring Park Ass'n,* 725 S.W.2d 935, 937 (Tenn. 1987);[2] *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.*

Tennessee Code Annotated section 50-6-204(a)(1)(A) (2014) requires an employer to provide an employee with "such medical and surgical treatment . . . made reasonably

---

[2] The Tennessee Workers' Compensation Appeals Board allows reliance on precedent from the Tennessee Supreme Court "unless it is evident that the Supreme Court's decision or rationale relied on a remedial interpretation of pre-July 1, 2014 statutes, that it relied on specific statutory language no longer contained in the Workers' Compensation Law, and/or that it relied on an analysis that has since been addressed by the general assembly through statutory amendments." *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *13 n.4 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015).

3

necessary by accident." In order to meet this requirement, the employer must begin by providing the employee with a panel of physicians from which the employee can choose a treating doctor. Tenn. Code Ann. § 50-6-204(a)(4)(A) (2014). The parties agree Vanderbilt provided a panel of physicians to Ms. Glover on the day of her accident, and she chose VOHC as her authorized physician. (Ex. 1 at 2.)

Whether an employee is justified in seeking payment for unauthorized medical expenses from an employer depends upon the circumstances of each case. *Buchanan v. Mission Ins. Co.,* 713 S.W.2d 654, 656 (Tenn. 1986). In *Buchanan,* the Supreme Court concluded that the statute:

> [M]akes it clear that the intent [of the Legislature] . . . was for the employee to certainly do no less than consult his employer before incurring the expenses called for by that statute if the employee expects the employer to pay for it. The opposite would seem to be against public policy.

*Id.* at 657. Ms. Glover concedes she did not seek authorization from Vanderbilt for additional medical care prior to February 25, 2015. (Ex. 1 at 3.) Thus, Vanderbilt is not obligated to pay any unauthorized medical expenses incurred by Ms. Glover before then. *Id.*

However, Ms. Glover asked Vanderbilt to provide a panel of doctors for continued treatment on February 25, 2015, and followed up this request with an email on February 26. (Ex. 6 at 2.) Vanderbilt's adjuster, Ms. Woodard, responded with an email on February 27 expressly denying responsibility for any additional medical care based on Ms. Glover's history, and advising her to seek payment for additional treatment through her health insurance. (Ex. 6 at 1.) "An employer who denies all liability for an accident and injury is in no position to insist upon the statutory provisions respecting the choosing of physicians." *CNA Ins. Co. v. Transou,* 614 S.W.2d 335, 337-38 (Tenn. 1981) (citing *Paristyle Beauty Salon, Inc. v. Chandler,* 341 S.W.2d 731 (1960)).

The facts in *Transou* are quite similar to those in the instant case, in that the employer "expressly refused to accept any responsibility for the employee's injury as a workmen's compensation injury and told him that if he entered the hospital for the surgery he would have to look to the group employees' hospitalization insurer." *Id.* at 338. The Supreme Court held that, as a result, the employer was responsible for the reasonable and necessary medical expenses incurred for treatment of the employee's work-related injury, even though the employer had not authorized those expenses. *Id.* Thus, the Court finds that, as of February 27, 2015, Ms. Glover was justified in seeking unauthorized medical care, and Vanderbilt would be obligated to pay for the reasonable and necessary medical expenses incurred by Ms. Glover for treatment of any work-related injury. *See Transou, supra,* at 337-338; *See also Gaf Bldg. Materials v. George,* 614 S.W.2d 430, 433 (Tenn. 2001).

4

Vanderbilt contends Ms. Glover could have returned to VOHC, as Vanderbilt's counsel informed the Mediating Specialist on April 21, 2015. (Ex. 11.) However, the Supreme Court has consistently held that once an employer denies medical care, it cannot require an employee to change doctors during the course of treatment. *Arnett v. McMinn County Gov't*, No. E2012-01356-WC-R3-WC, 2013 Tenn. LEXIS 596, at *36 (Tenn. Workers' Comp. App. Panel July 9, 2013); *see also Lambert v. Famous Hospitality, Inc.*, 947 S.W.2d 852, 854 (Tenn. 1997). From February 27 through April 21, Ms. Glover treated with Dr. Crist's office fourteen times. (Ex. 8.) "Once the Employee had justifiably engaged [a physician], the subsequent efforts by the Employer to arrange for a different physician did not preclude the Employee from continuing under his care." *Arnett, supra,* at *33. Thus, Vanderbilt's re-authorization of VOHC did not preclude Ms. Glover from seeking additional care from Dr. Crist, or eliminate Vanderbilt's obligation to pay for reasonable and necessary care incurred as a result of Ms. Glover's fall on November 14, 2014. *Id.*

However, Ms. Glover must still prove the essential elements of her claim, including causation. *See Tindall, supra,* at 937. Medical evidence is generally required to establish a causal relationship, "[e]xcept in the most obvious, simple and routine cases." *Cloyd v. Hartco Flooring Co.*, 274 S.W.3d 638, 643 (Tenn. 2008) (quoting *Orman v. Williams Sonoma, Inc.*, 803 S.W.2d 672, 676 (Tenn. 1991)). Thus, Ms. Glover must establish that Dr. Crist treated her for injuries resulting from a work-related injury before Vanderbilt would be obligated to pay for it. *Id.*; *see also Greenlee v. Care Inn of Jefferson City*, 644 S.W.2d 679, 679-80 (Tenn. 1980).

Other than medical bills, the only record Ms. Glover provided documenting Dr. Crist's treatment was the initial visit on February 12, 2015. (Ex. 8 at 1-6.) The only reference to causation in the record states, "[t]he patient reports that her symptoms began on 11/14/14 following a fall on a wet floor at work," which is simply a recitation of the history given by Ms. Glover. *Id.* at 2. The record contains no opinion from Dr. Crist that the conditions for which he treated Ms. Glover "primarily arose out of and in the course of her employment" with Vanderbilt, as required by Tennessee Code Annotated section 50-6-102(13) (2014). Thus, the Court finds Ms. Glover has not met her burden of proof with regard to causation.

In addition, the Supreme Court has held that when an employee receives unauthorized medical care for a work-related injury, she must establish the necessity and reasonableness of the charges before the employer is responsible. *Moore v. Town of Collierville*, 124 S.W.3d 93, 98 (Tenn. 2004). Furthermore, "expert testimony is needed to establish the reasonableness of medical bills." *Greenlee, supra,* at 680.

In this case, Ms. Glover only presented the medical bills incurred through her treatment with Dr. Crist. (Ex. 8.) There is no evidence establishing these expenses were

reasonable, or incurred for necessary treatment of injuries Ms. Glover sustained in her fall on November 14, 2014. Therefore, the Court finds Ms. Glover failed to establish the reasonableness and necessity of medical expenses incurred with Dr. Crist. *Id.*

In sum, Ms. Glover has yet to provide sufficient evidence to establish she is likely to prevail at trial on the issue that Dr. Crist's chiropractic treatment causally relates to her fall on November 14, 2014, or that the treatment he provided was reasonable and necessary for any work-related injury. *See McCord, supra,* at *9. Therefore, the Court denies her request for payment of her chiropractic bills at this time.

IT IS, THEREFORE, ORDERED that:

1.      Ms. Glover's request for payment of Dr. Crist's chiropractic bills is denied.

2.      This matter is set for Initial Hearing on December 16, 2015, at 9:00 a.m. C.T.

**ENTERED THIS THE 12th DAY OF NOVEMBER, 2015.**

**Robert V. Durham, Judge**
**Court of Workers' Compensation Claims**

**Initial Hearing:**

**An Initial Hearing has been set with Judge Robert Durham, Court of Workers' Compensation Claims. You must call 615-253-0010 or toll-free at 866-689-9049 to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

6

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within three business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within three business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

## APPENDIX

Exhibits:

1. Affidavit of Sharon Glover;
2. Affidavit of Susan Sefers;
3. Affidavit of Maralie Exton;
4. Affidavit of Sharon Glover;
5. Employee's Choice of Physician form;
6. Email exchange between Sharon Glover and Tracy Woodard;
7. Medical Records from VOHC;
8. Medical records and bills from Crist Chiropractic Wellness; and
9. X-ray report dated November 12, 2010.

Technical Record:[3]

1. Petition for Benefit Determination;
2. Dispute Certification Notice;
3. Request for Expedited Hearing;
4. Transfer Order; and
5. Employer's Response to REH.

---

[3] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order Denying Benefits was sent to the following recipients by the following methods of service on this the 12 th day of November, 2015.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|------|------|------|------|
| Sharon Glover | X | | X | Sharon.smith@vanderbilt.edu |
| Nathaniel Cherry | | | X | ncherry@howardtatelaw.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

9