

# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT KNOXVILLE

| | |
|---|---|
| **EDDIE HUMPHREY, JR.** <br> **Employee,** <br> **v.** <br> **SECURITY FIRE PROTECTION CO. INC.,** <br> **Employer,** <br> **and** <br> **INSURANCE CO. OF THE STATE OF PA,** <br> **Carrier.** | )    **Docket No.: 2016-03-0708** <br> ) <br> ) <br> )    **State File No.: 8732-2016** <br> ) <br> ) <br> )    **Judge Pamela B. Johnson** <br> ) <br> ) |

## EXPEDITED HEARING ORDER
## GRANTING TEMPORARY PARTIAL DISABILITY AND MEDICAL BENEFITS

This matter came before the undersigned Workers' Compensation Judge on November 4, 2016, upon the Request for Expedited Hearing filed by Eddie Humphrey, Jr. pursuant to Tennessee Code Annotated section 50-6-239 (2015). The central legal issue is whether Mr. Humphrey sustained an injury arising primarily out of and in the course and scope of his employment with Security Fire Protection, entitling Mr. Humphrey to additional medical and temporary disability benefits. For the reasons set forth below, the Court holds Mr. Humphrey sufficiently demonstrated that he is likely to prevail at a hearing on the merits that his February 2, 2016 injury arose primarily out of and in the course and scope of his employment. Accordingly, this Court concludes Mr. Humphrey is entitled to the requested benefits.[1]

### History of Claim

Mr. Humphrey is a forty-eight-year-old resident of Knox County, Tennessee. Mr. Humphrey worked for Security Fire as a Sprinkler Fitter Foreman. His occupation frequently required crawling and squatting in the ceiling above the sprinkler systems in order to install or repair sprinkler systems for fire protection purposes.

---

[1] The attached Appendix contains a complete listing of the Technical Record and Exhibits admitted at the Expedited Hearing.

On February 2, 2016, Mr. Humphrey responded to a service call at a nursing home. Working in the nursing home attic, he crawled around on his knees and squatted on wooden trusses for several hours, looking for a leak in the sprinkler system. As he worked, he developed soreness in left knee and leg. The next day, he reported the injury to his supervisor. (Ex. 1.)

Upon receiving notice of the work incident, Security Fire provided Mr. Humphrey with a panel of physicians, and he selected Dr. John Reynolds as his authorized treating physician (ATP). Dr. Reynolds evaluated Mr. Humphrey on two occasions. In March, Dr. Reynolds examined Mr. Humphrey, ordered and reviewed x-rays of the left knee, diagnosed "chronic left knee pain," "rule out internal derangement," and "mild osteoarthritis."[2] Given Mr. Humphrey's ongoing symptoms, Dr. Reynolds ordered a left knee MRI. (Ex. 2.) In a Worklink report, Dr. Reynolds restricted Mr. Humphrey to limited duty. (Ex. 9.)

Following the MRI, Mr. Humphrey returned to see Dr. Reynolds in April. Dr. Reynolds reviewed the MRI and noted chrondromalacia patella with no evidence of meniscal tear or ligamentous injury. Dr. Reynolds discussed the findings with Mr. Humphrey, advising, "Presumably, he has aggravated his chondromalacia. As we discussed, it is possible he could have some occult meniscal injury not visualized on the MRI." Dr. Reynolds ordered physical therapy and instructed Mr. Humphrey to return in one month. (Ex. 2.) In the Worklink report, Dr. Reynolds noted a diagnosis of "[left] knee chondromalacia/strain" and continued the limited duty restrictions. (Ex. 9.)

Dr. Reynolds did not examine Mr. Humphrey again following the April appointment but responded to questionnaires submitted by Security Fire's third-party workers' compensation administrator. On April 6, Dr. Reynolds listed Mr. Humphrey's diagnosis as "chondromalacia" and indicated Mr. Humphrey's "current condition DID NOT primarily arise out of claimant's employment 50% or under due to work." On April 12, Dr. Reynolds checked "No" when asked whether Mr. Humphrey's "knee strain work injury was fully recovered and if he is just left with the pre-existing non work condition of chondromalacia." (Ex. 3.)

Security Fire issued a Notice of Controversy on April 19 and denied benefits stating, "Claim denied as authorized treating physician has opined the condition is not work related." (Ex. 4.) Mr. Humphrey testified his temporary disability benefits stopped on April 5. Security Fire, through a nurse case manager, cancelled Mr. Humphrey's May appointment with Dr. Reynolds. (Ex. 5.)

Following Security Fire's denial of Mr. Humphrey's claim and cessation of

---

[2] Mr. Humphrey reported a history of left knee arthroscopy, partial lateral meniscectomy, and patellar chondroplasty in 1999. He also had a right knee arthroscopy, partial lateral meniscectomy, removal of loose body, and chondroplasty. (Ex. 2 and Ex. 6.)

2

benefits, Mr. Humphrey sought medical treatment on his own for his ongoing symptoms.[3] In May, Mr. Humphrey saw Dr. Gregory Mathien, who ordered additional diagnostic testing and reviewed the MRI. Dr. Mathien diagnosed left knee pain with iliotibial band syndrome and patellofemoral chondromalacia. Dr. Mathien recommended physical therapy and a topical compounded anti-inflammatory analgesic. Dr. Mathien further recommended a "light-duty work environment" and to "return as scheduled." (Ex. 6.)

Mr. Humphrey returned to see Dr. Mathien in June with increased symptoms following completion of leg presses during physical therapy. Dr. Mathien noted, "In my opinion, it appears that his symptoms were related to his injury in February when he was working in the attic for a number of hours developing this leg pain, certainly historically related to the event." *Id.*

In July, Security Fire's counsel sent a third questionnaire to Dr. Reynolds, requesting clarification of his prior opinions. In his response, Dr. Reynolds responded "yes" to whether Mr. Humphrey's "knee strain primarily, meaning more than 50%, related to the 2/2/16 work-injury." However, Dr. Reynolds replied "no" to whether Mr. Humphrey required additional care form the knee strain.[4] (Ex. 7.)

During the hearing, Mr. Humphrey argued Security Fire summarily and without merit denied his claim, terminated his medical treatment with Dr. Reynolds, and stopped payment of his temporary disability benefits. When Security Fire wrongfully denied his claim and terminated his benefits, he rightfully sought medical treatment on his own with Dr. Mathien. Mr. Humphrey asserted he is entitled to substitute Dr. Mathien as his authorized treating physician, relying on *Lambert v. Famous Hosp., Inc.*, 947 S.W.2d 852, 853 (Tenn. 1997), and *U.S. Fid. and Guar. Co. v. Morgan*, 795 S.W.2d 653, 654 (Tenn. 1990). In addition to entitlement to medical benefits, Mr. Humphrey averred he is entitled to temporary disability benefits from April 5, 2016, until such time as he returns to work or reaches maximum medical improvement.

Security Fire argued Mr. Humphrey selected Dr. Reynolds as his ATP from a panel of physicians. Dr. Reynolds diagnosed Mr. Humphrey with left knee chondromalacia and further opined the chondromalacia was pre-existing and not more than fifty percent or more related to Mr. Humphrey's employment. As such, it asserted it properly denied Mr. Humphrey's claim and terminated benefits.

Additionally, Security Fire averred Mr. Humphrey unilaterally chose to go to his

---

[3] Mr. Humphrey testified during the hearing that he spoke to Security Fire personnel and advised that he felt like Dr. Reynolds was wrong and that he needed a second opinion. He further testified that his employer told him that the insurance carrier would not pay for a second opinion. On cross-examination, Mr. Humphrey admitted that he never requested a second opinion from the adjuster and Security Fire personnel never set up his medical appointments with Dr. Reynolds.

[4] Mr. Humphrey admitted on cross-examination that he was aware that Security Fire offered him a return to Dr. Reynolds. He testified he declined the return appointment because he was already seeing Dr. Mathien.

3

personal orthopedic surgeon as opposed to requesting a second opinion or filing a Petition for Benefit Determination to request a return appointment with Dr. Reynolds. Dr. Mathien, based upon the history provided by Mr. Humphrey, related the iliotibial band tendinitis to Mr. Humphrey's work in February, without providing an opinion as to whether the injury arose primarily out of and in the course and scope of his employment with Security Fire. Given the presumption of correctness provided to Dr. Reynolds as the ATP, his opinion as to causation should be accepted and applied. Security Fire averred Dr. Mathien did not apply the current standard for establishment of causation. Moreover, Security Fire distinguished the present case from the cases cited by Mr. Humphrey, arguing the employers in those cases did not provide a panel of physicians. In the alternative, if the Court determines that Mr. Humphrey is entitled to medical benefits, Security Fire asserted Dr. Reynolds should remain the ATP, not allowing the substitution of Dr. Mathien as the ATP.

## Findings of Fact and Conclusions of Law

The Court now turns to the legal principles it must apply to grant or deny Mr. Humphrey the benefits he requests. Mr. Humphrey need not prove every element of his claim by a preponderance of the evidence in order to recover temporary disability and/or medical benefits at an Expedited Hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Instead, he must come forward with sufficient evidence from which this Court might determine he is likely to prevail at a hearing on the merits. *Id.*; Tenn. Code Ann. § 50-6-239(d)(1) (2015).

This lesser evidentiary standard does not relieve Mr. Humphrey of the burden of producing evidence of an injury by accident that arose primarily out of and in the course and scope of employment at an Expedited Hearing, but "allows some relief to be granted if that evidence does not rise to the level of a 'preponderance of the evidence.'" *Buchanan v. Carlex Glass Co.*, No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015). In analyzing whether he met his burden, the Court will not remedially or liberally construe the law in his favor, but instead shall construe the law fairly, impartially, and in accordance with basic principles of statutory construction favoring neither Mr. Humphrey nor Security Fire. *See* Tenn. Code Ann. § 50-6-116 (2015).

With the above principles in mind, an injury must arise primarily out of and occur in the course and scope of the employment to be compensable under the Workers' Compensation Law. *McCaffery v. Cardinal Logistics*, No. 2015-08-0218, 2015 TN Wrk. Comp. App. Bd. LEXIS 50, at *8-9 (Tenn. Workers' Comp. App. Bd. Dec. 10, 2015); *see also* Tenn. Code Ann. § 50-6-102(14) (2015). The term "injury" is defined as "an injury by accident . . . arising primarily out of and in the course and scope of employment, that causes death, disablement or the need for medical treatment of the employee." *Id.* For an

4

injury to be accidental, it must be "caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence." Tenn. Code Ann. § 50-6-102(14)(A) (2015).

In the present case, Mr. Humphrey credibly testified about a specific incident, identifiable by time and place that occurred while he performed his job duties at Security Fire. Mr. Humphrey stated he responded to a service call at a nursing home on February 2, 2016. Working in the nursing home attic, he crawled around on his knees and squatted on wooden trusses for several hours, looking for a leak in the sprinkler system. As he worked, he developed soreness in left knee and leg.

Having credibly established an incident, the issue becomes whether the February 2 incident resulted in an injury arising primarily out of and in the course and scope of employment in accordance with the standard set forth in *McCord*. Dr. Reynolds, the ATP, examined Mr. Humphrey on April 5 and opined, "Presumably, he has aggravated his chondromalacia. As we discussed, it is possible he could have some occult meniscal injury not visualized on the MRI." In the April 5 Worklink report, Dr. Reynolds noted a diagnosis of "[left] knee chondromalacia/strain." Dr. Reynolds then responded to a series of questionnaires. In response to Security Fire's April 6 questionnaire, Dr. Reynolds listed Mr. Humphrey's diagnosis as "chondromalacia," indicating Mr. Humphrey's "current condition DID NOT primarily arise out of claimant's employment 50% or under due to work." In his response to Security Fire's April 12 questionnaire, Dr. Reynolds checked "No" when asked whether Mr. Humphrey's "knee strain work injury was fully recovered and if he is just left with the pre-existing non work condition of chondromalacia." Later, Dr. Reynolds responded to Security Fire's July 22 questionnaire and answered "yes" to whether Mr. Humphrey's "knee strain primarily, meaning more than 50%, related to the 2/2/16 work-injury." (Ex. 7.)

Considering the Dr. Reynolds's medical records and responses as a whole, this Court finds that Dr. Reynolds diagnosed Mr. Humphrey with a left knee strain that arose primarily out of and in the course and scope of his employment with Security Fire. Further, Dr. Reynolds also diagnosed Mr. Humphrey with left knee chondromalacia and opined that the chondromalacia did not arise primarily out of or occur in the course and scope of his employment. This Court is uncertain as to whether the aggravation of the chondromalacia arose primarily out of and in the course and scope of employment. Dr. Reynolds noted that Mr. Humphrey "aggravated his chondromalacia," but Dr. Reynolds was not asked to address whether the aggravation of the chondromalacia that caused the need for medical treatment arose primarily out of and in the course and scope of employment. This Court concludes Mr. Humphrey demonstrated by sufficient evidence that he sustained a left knee strain arising primarily out of and in the course and scope of his employment with Security Fire.

Having determined Mr. Humphrey appears likely to prove he sustained an injury

5

arising primarily out of and in the course and scope of employment, this Court must determine his entitlement to medical and/or temporary disability benefits.

As for medical benefits, it is well-settled that an employer is legally obligated to provide to an injured employee reasonable and necessary medical treatment that is causally related to the work accident. *See* Tenn. Code Ann. § 50-6-204(a)(1)(A) (2015). In circumstances where an employer refuses to provide medical treatment and/or denies the employee's claim, the employer bears the risk of being held responsible for medical expenses incurred by the employee in the event the claim is deemed compensable. *See, e.g., GAF Bldg. Materials v. George*, 47 S.W.3d 430, 433 (Tenn. Workers' Comp. Panel 2001); *McCord*, at *13 ("[A]n employer who elects to deny a claim runs the risk that it will be held responsible for medical benefits obtained from a medical provider of the employee's choice[.]").

In *Young v. Young Electric Co., et al.*, No. 2015-06-0860, 2016 TN. Wrk. Comp. App. Bd. LEXIS 24 (Tenn. Workers' Comp. App. Bd. May 25, 2016), the employee alleged he injured his neck at a jobsite when he lifted construction materials, lost his balance, and fell backwards. The employer provided a panel of physicians several weeks after the alleged injury but declined to schedule an appointment, denying the claim instead. In the interim, the injured employee sought medical treatment on his own. The trial court awarded ongoing medical benefits and certain past medical expenses but denied temporary disability benefits. Both parties appealed. The Appeals Board concluded the injured employee justifiably sought treatment on his own and was entitled to continue treating with his own physician as the authorized physician. *Id.* at *18-19. The Appeals Board further awarded reimbursement of medical expenses incurred after the employer received notice of the work injury but denied medical treatment. *Id.* at *18.

Security Fire attempted to distinguish cases such as *Young*, set forth above, and the cases of *Lambert* and *U.S. Fidelity*, cited by Mr. Humphrey, arguing that the employers in the cited cases did not provide a panel and/or authorize treatment with the physician selected by the panel, such that the injured employee properly sought treatment on his or her own. Security Fire argued this was not the case here because it provided a panel of physicians and Mr. Humphrey selected Dr. Reynolds. This Court disagrees with Security Fire's position.

The record demonstrates that Security Fire provided a panel and Mr. Humphrey selected Dr. Reynolds. However, despite the fact that Dr. Reynolds checked "No" when asked whether Mr. Humphrey's "knee strain work injury was fully recovered and if he is just left with the pre-existing non work condition of chondromalacia," Security Fire issued a Notice of Controversy denying the claim and terminated Mr. Humphrey's medical benefits. (Ex. 3, Ex. 4.) Thereafter, Mr. Humphrey offered uncontroverted testimony that he asked his employer for a second opinion, but Security Fire responded that the carrier would not authorize a second opinion. Once Security Fire denied Mr.

6

Humphrey medical treatment for his work injury, this Court holds that Mr. Humphrey rightfully sought medical treatment on his own with Dr. Mathien for his continued symptoms. As such, this Court concludes that Mr. Humphrey sufficiently demonstrated that he is likely to prevail at a hearing on the merits on entitlement to medical benefits and reimbursement of past medical expenses incurred with Dr. Mathien. Accordingly, Security Fire shall provide medical benefits to Mr. Humphrey, and Dr. Mathien shall be designated the authorized treating physician.

The last issue this Court must consider is Mr. Humphrey's eligibility for temporary disability benefits. Temporary partial disability benefits are available when the temporary disability is not total. *Id.; see also* Tenn. Code Ann. § 50-6-207(1)-(2) (2015). "Temporary partial disability refers to the time, if any, during which the injured employee is able to resume some gainful employment but has not reached maximum recovery." *Id.* Thus, in circumstances where the treating physician has released the injured worker to return to work with restrictions prior to maximum medical improvement, and the employer either (1) cannot return the employee to work within the restrictions or (2) cannot provide restricted work for a sufficient number of hours and/or at a rate of pay equal to or greater than the employee's average weekly wage on the date of injury, the injured worker may be eligible for temporary partial disability. *Id.*

Here, this Court finds Mr. Humphrey's medical records demonstrate that Dr. Reynolds restricted Mr. Humphrey to light duty work. Dr. Mathien continued the light duty restrictions. Moreover, Mr. Humphrey testified he has not worked since his temporary disability benefits were terminated on April 5. Security Fire did not offer any evidence that it offered Mr. Humphrey work within his restrictions. This Court concludes Mr. Humphrey demonstrated he is likely to prevail at a hearing on the merits regarding entitlement to temporary partial disability benefits. Therefore, Security Fire shall pay Mr. Humphrey temporary partial disability benefits from April 5, 2016, the date of his last temporary disability payment, to the present. Security Fire shall continue to pay Mr. Humphrey temporary disability benefits in accordance with Tennessee Code Annotated section 50-6-207 (2015).

**IT IS, THEREFORE, ORDERED** as follows:

1. Security Fire shall authorize and pay for medical care for Mr. Humphrey's left knee injuries as required by Tennessee Code Annotated section 50-6-204 (2015). Dr. Mathien shall become the authorized treating physician.

2. Security Fire shall pay for Mr. Humphrey's past medical expenses with Dr. Mathien made reasonably necessary by the February 2, 2016 work injury. Mr. Humphrey or Dr. Mathien shall furnish medical bills to Security Fire.

7

3. The amount of temporary disability benefit is $666.91 per week based on Mr. Humphrey's average weekly wage of $1,000.31.

4. Payment of past-due temporary disability benefits, in the amount of $23,341.85, shall be made for the period from April 5, 2016, through December 6, 2016.

5. Security Fire shall continue to pay to Mr. Humphrey's temporary disability benefits in regular intervals until he becomes ineligible for those benefits by reaching maximum medical improvement, by returning to work at a wage equal to or greater than the pre-injury wage, or by release without restrictions by the authorized treating physician. Security Fire's representative shall immediately notify the Bureau, Mr. Humphrey, and Mr. Humphrey's counsel, if any, of the intent to terminate temporary disability benefits by filing Form C-26, citing the basis for the termination.

6. This matter is set for a Scheduling Hearing on **January 13, 2017**, at **9:30 a.m. Eastern Time/ 8:30 a.m. Central Time**. The parties must call (865) 594-0091 or (855) 543-5041 toll-free to participate in the Hearing. Failure to appear by telephone may result in a determination of the issues without your further participation.

7. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2015). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.

8. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit by email at WCCompliance.Program@tn.gov or by telephone at (615) 253-1471 or (615) 532-1309.

**ENTERED** this the 7th day of December, 2016.

**HON. PAMELA B. JOHNSON**
**Workers' Compensation Judge**

8

<u>Right to Appeal</u>:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a filing fee in the amount of $75.00. Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's

9

position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

## APPENDIX

Technical Record:
- Petition for Benefit Determination, filed July 14, 2016;
- Dispute Certification Notice, filed September 15, 2016;
- Request for Expedited Hearing, filed September 19, 2016;
- Brief in Support of Employee's Request for an Expedited Hearing, filed on September 19, 2016;
- Employer's Pre-Expedited Hearing Brief, filed October 21, 2016;
- Employee's Motion to Supplement the Record, filed November 7, 2016; and
- Agreed Order to Supplement the Exhibits, entered November 28, 2016.

The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

Exhibits:
- EXHIBIT 1: Affidavit of Eddie Humphrey, Jr.;[5]
- EXHIBIT 2: Medical Records of Dr. John Reynolds;
- EXHIBIT 3: ESIS Questionnaires to and Response of Dr. John Reynolds, completed, dated April 6, 2016, and April 12, 2016;
- EXHIBIT 4: Notice of Controversy, dated April 19, 2016;
- EXHIBIT 5: Letter from Eddie Humphrey to Dr. John Reynolds, dated May 9, 2016;
- EXHIBIT 6: Medical Records of Dr. Gregory Mathien;
- EXHIBIT 7: Letter from Attorney Kevin Washburn to Dr. John Reynolds, dated July 22, 2016;
- EXHIBIT 8: Wage Statement, Form C-41; and

---

[5] Security Fire objected to paragraph 5 of the Exhibit 1 on the basis that it contained a legal conclusion and moved to strike the phrase "[t]his injury occurred in the course and scope of my employment." Mr. Humphrey agreed to strike the phrase. Based upon the objection and agreement of the parties, the phrase "[t]his injury occurred in the course and scope of my employment" was stricken and was not considered by this Court in reaching its findings of fact and conclusions of law.

- EXHIBIT 9: Worklink Physician's Reports, dated March 25, 2016, and April 5, 2016.

Stipulations:
- The date of injury is February 2, 2016.
- Mr. Humphrey provided notice to Security Fire.
- Mr. Humphrey has an average weekly wage of $1,000.31, resulting in a workers' compensation rate of $666.91 per week.
- Security Fire provided Mr. Humphrey a panel of physicians, and he selected Dr. John Reynolds as his authorized treating physician.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 7th day of December, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|------|------|------|------|
| Timothy Roberto, Esq., Employee's Counsel | | | X | troberto@brownandroberto.com |
| Kevin Washburn, Esq., Employer's Counsel | | | X | kwashburn@allensummers.com |

PENNY SHRUM, Court Clerk
WC.CourtClerk@tn.gov

11