FILED

April 10, 2017

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time 1:25PM



**TENNESSEE BUREAU OF WORKERS' COMPENSATION**
**IN THE COURT OF WORKERS' COMPENSATION CLAIMS**
**AT MURFREESBORO**

| | | |
|---|---|---|
| **RICKY PARSLEY** | ) | **Docket No.: 2016-05-0972** |
| **Employee,** | ) | |
| **v.** | ) | **State File Number: 74269-2016** |
| **HUTTON CONST., INC.** | ) | |
| **Employer,** | ) | **Judge Dale Tipps** |
| **And** | ) | |
| **TRAVELERS INDEM. CO.** | ) | |
| **Insurance Carrier.** | ) | |
| | ) | |

---

### EXPEDITED HEARING ORDER GRANTING BENEFITS

---

This matter came before the undersigned workers' compensation judge on March 30, 2017, on the Request for Expedited Hearing filed by Ricky Parsley. The present focus of this case is whether Mr. Parsley is entitled to medical and temporary disability benefits for his alleged shoulder injuries. The central legal issue is whether Mr. Parsley is likely to establish at a hearing on the merits he suffered an injury arising primarily out of and in the course and scope of his employment and if so, whether his claim is barred for failure to give adequate notice of injury. For the reasons set forth below, the Court holds Mr. Parsley is likely to meet this burden and gave adequate notice of his injury. Thus, he is entitled to the requested medical and temporary disability benefits.

### History of Claim

Mr. Parsley began working for Hutton Construction, Inc., in 2012 as a construction superintendent. He and his wife, Maria, testified that his job required him to perform physical work almost daily, such as lifting or moving equipment, sheet rock, rebar, lumber, and insulation. In late March 2016, he began having right shoulder pain while working at a construction site in Erwin, Tennessee. He mentioned the problem to his project manager, Matt Elliot, who told him to "be tough and work through it." Mr. Parsley did not seek medical attention because he did not think the problem was serious and he expected it to go away.

Because of the right shoulder pain, Mr. Parsley guarded his right arm and

1

compensated with his left arm and shoulder while continuing to perform his regular duties. By the time his job assignment ended in Erwin, he began experiencing severe pain in his left shoulder, back and chest, as well as pain and numbness in his left arm. His initial concern was that he was suffering some sort of cardiac problem. Just before he left for a new assignment in Louisiana, Mr. Parsley went to his primary medical provider, NP Heather Melton, on June 9. NP Melton noted that Mr. Parsley was complaining of "upper back pain with left arm pain." After an examination and an abnormal EKG, she referred Mr. Parsley to a cardiologist, Dr. Jeffery Webber.

Mr. Parsley began working his new assignment in Louisiana, but returned to Tennessee for his cardiology appointment on June 30. Dr. Webber noted a "3-4 month history of substernal chest pain radiating to the left arm." He assessed unstable angina, essential hypertension, and dyspnea on exertion. Dr. Webber also recommended a cardiac catheterization.

Before Dr. Webber performed the cardiac catheterization, Mr. Parsley returned to NP Melton on July 5. In addition to the follow-up for his chest pain, NP Melton noted he also presented with shoulder pain. Her examination revealed tenderness and crepitus in both shoulders, as well as limited range of motion in the left shoulder. NP Melton ordered a left-shoulder MRI and noted that Mr. Parsley was unable to return to work until evaluated by an orthopedic specialist. A few days after the MRI, he returned to NP Melton, at which time she noted he had an orthopedic appointment scheduled.

Mr. Parsley saw orthopedic surgeon, Dr. Oscar Johns, on July 26, 2016. Dr. Johns noted:

> He sustained in injury to his left shoulder and at that time felt sudden severe pain in the shoulder. This was worked up as a cardiac condition initially[.] . . . The current left shoulder pain has been going on for the past 6 months. It came on with repetitive lifting.

Dr. Johns diagnosed a left-shoulder full thickness rotator cuff tear with impingement. He recommended arthroscopic repair, including acromioplasty and coracoplasty, followed by physical therapy. Although Mr. Parsley initially scheduled his shoulder surgery for August 3, he had to cancel it because he could not get surgical clearance from Dr. Webber until at least one month after his cardiac catheterization on July 15.

Following up with Mr. Parsley on August 25, Dr. Webber revised his diagnosis to atypical chest pain, suggesting these might be musculoskeletal symptoms. Mr. Parsley subsequently returned to NP Melton at least two times, and she continued her restriction of no work "until cleared by Ortho."

Mr. and Ms. Parsley testified that the July 19 appointment with NP Melton was the

first time any of Mr. Parsley's medical providers advised that he had a torn rotator cuff. The first indication from any of the medical providers that the condition was related to Mr. Parsley's employment was when he saw Dr. Johns on July 26. As a result of that visit, Ms. Parsley contacted Jerry Porter in Hutton's HR department. He provided her with a workers' compensation claim worksheet that she filled out and faxed back. When Ms. Parsley received no response after a couple of weeks, she called Mr. Porter, who said he did not receive her fax. She then resent the worksheet to him on August 15.

Hutton terminated Mr. Parsley on August 29. The separation notice states he took medical leave and was unable to return to his work duties. Hutton then filed a Notice of Denial of Mr. Parsley's workers' compensation claim on September 26. Because his health insurance ended with his termination, Mr. Hutton has not yet had the recommended shoulder surgery. He has not worked since June 24.[1]

Mr. Parsley underwent an independent medical examination by Dr. Robert Landsberg on December 7. Dr. Landsberg noted in the history section of his report that Mr. Parsley felt a sudden onset of a pull and discomfort in his right shoulder while lifting a 2x12 board in April. As a result, he began favoring his left shoulder. Although Mr. Parsley reported a specific event of moving rebar while working in Louisiana, he also said he gradually developed symptoms in his chest, left shoulder, and left arm. Dr. Landsberg examined Mr. Parsley and reviewed his medical records and MRI. He concluded that, based on Mr. Parsley's history, "over 51 percent of each of his shoulder problems is secondary to his work activities at Hutton Construction." He also stated that Mr. Parsley "would be totally disabled from construction work activities starting 6/28/16, unless they had a purely office job where he could perhaps answer the phone and do some desk work."

Hutton introduced the affidavits of Matt Elliott and Trey Hall. Mr. Elliot was Mr. Parsley's supervisor. He stated that Mr. Parsley never told him he had been hurt on the job. He also said Mr. Parsley's job "did not require him to lift, push, pull or tug heavy objects."

Trey Hall is the Vice President of Construction for Hutton. He provided a copy of Mr. Parsley's job description and a copy of a portion of the company's Safety Manual. He also stated that Mr. Parsley's job "did not require him to lift, push, pull or tug heavy objects." He further stated that Mr. Parsley did not report a job injury to him in March 2016. Finally, Mr. Hall said Mr. Parsley "received a temporary layoff by Hutton Construction, Inc. on or about 7-1-16. It is not uncommon for our employees to receive temporary layoffs based on the volume and nature of our work in the construction industry."

---

[1] The parties were unsure of Mr. Parsley's last day of work, but agreed it was the last Friday in June, which the Court notes was June 24.

Mr. Parsley seeks medical treatment with Dr. Johns as his treating physician. He also contends he is entitled to temporary disability benefits for the period of June 24, 2016, through the present.

Hutton denies that Mr. Parsley is entitled to any workers' compensation benefits. It contends he is not likely to prove his shoulder condition arose out of and in the course and scope of his work because his medical proof is speculative and Dr. Landsberg failed to address numerous inconsistencies in Mr. Parsley's claim. Hutton also argues that Mr. Parsley's claim is barred for failure to provide adequate statutory notice of the injury.

## Findings of Fact and Conclusions of Law

Because this case is in a posture of an Expedited Hearing, Mr. Parsley need not prove every element of his claim by a preponderance of the evidence in order to obtain relief. *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015). Instead, he must come forward with sufficient evidence from which this Court might determine he is likely to prevail at a hearing on the merits. *Id.*; Tenn. Code Ann. § 50-6-239(d)(1).

*Notice*

Applying these principles to the facts of this case, the Court turns first to the issue of notice, as it is potentially dispositive. The controlling statute, Tennessee Code Annotated section 50-6-201(a)(1) (2015),[2] provides in pertinent part that:

> Every injured employee . . . shall, immediately upon the occurrence of an injury, or as soon thereafter as is reasonable and practicable, give or cause to be given to the employer who has no actual notice, written notice of the injury . . . unless it can be shown that the employer had actual knowledge of the accident.

Because Mr. Parsley alleges gradual injuries, Section 201(b) is also applicable:

> In those cases where the injuries occur as the result of gradual or cumulative events or trauma, then the injured employee or the injured employee's representative shall provide notice of the injury to the employer within thirty (30) days after the employee:

---

[2] Section 201 currently requires notice within fifteen days. However, the amendment establishing the fifteen-day deadline did not take effect until July 1, 2016. Because Mr. Parsley is alleging a gradual injury, his injury date is the "last date worked." *See Maples v. Federal-Mogul Corp.*, 2016 TN Wrk. Comp. App. Bd. LEXIS 8, at *27 (Feb. 17, 2016). As he had already stopped working by July 1, his claim is governed by the prior statute's notice requirement of thirty days.

4

(1) Knows or reasonably should know that the employee has suffered a work-related injury that has resulted in permanent physical impairment; or

(2) Is rendered unable to continue to perform the employee's normal work activities as the result of the work-related injury and the employee knows or reasonably should know that the injury was caused by work-related activities.

Both Mr. and Ms. Parsley testified that he initially thought his left-shoulder symptoms were the result of a cardiac problem, a suspicion shared by NP Melton, who referred Mr. Parsley to a heart specialist. The unrefuted testimony during the hearing was that July 19 was the first time Mr. Parsley became aware he had a torn rotator cuff. Similarly, Hutton submitted no proof controverting Mr. Parsley's testimony that none of his medical providers indicated his condition was related to his employment until he saw Dr. Johns on July 26. Ms. Parsley faxed the workers' compensation form to Hutton's HR department on August 15 (or perhaps as much as two weeks earlier). Thus, Mr. Parsley gave notice within thirty days of the date that he knew or reasonably should have known that that his left-shoulder condition that rendered him unable to continue working was an injury caused by his work-related activities.

There is a dispute as to whether Mr. Parsley actually gave Mr. Elliott notice of his right shoulder injury. The Court finds it is unnecessary to resolve this factual dispute because Tennessee Code Annotated section 50-6-201(a)(3) provides that failure to give notice will not bar compensation "unless the employer can show, to the satisfaction of the workers' compensation judge before which the matter is pending, that the employer was prejudiced by the failure to give the proper notice, and then only to the extent of the prejudice." Hutton presented no evidence of any prejudice nor suggested it in any arguments. Mr. Parsley has not had any medical treatment for his right shoulder, and there is no indication his alleged failure to report the injury resulted in any additional damage to his shoulder or any impediment to Hutton investigating the claim. The Court therefore finds that Mr. Parsley appears likely to prevail at a hearing on the merits on the issue of notice.

*Causation*

The inquiry next turns to the question of compensability. To prove a compensable injury, Mr. Parsley must show that his alleged injury arose primarily out of and in the course and scope of his employment. Tenn. Code Ann. § 50-6-102(14) (2016). To do so, he must show his injury was primarily caused by an incident, or specific set of incidents, identifiable by time and place of occurrence. *Id*. at § 50-6-102(14)(A). Further, he must show, "to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment, considering all causes." *Id*. at § 50-6-102(14)(C). "Shown to a reasonable degree of medical certainty" means that, in the opinion of the treating physician, it is more likely than not

considering all causes as opposed to speculation or possibility. *Id*. at § 50-6-102(14)(D).

The only medical proof submitted regarding causation was Dr. Landsberg's IME report. Hutton presented no medical opinions to counter this evidence, but merely argued that Dr. Landsberg's opinion was speculative. However, Hutton failed to identify any speculation. An examination of his report shows Dr. Landsberg did not say Mr. Parsley's work "could have" or "might have" caused his problems or that it was only a "possibility." Instead, he stated, "within a reasonable degree of medical certainty, over 51 percent of each of his shoulder problems is secondary to his work activities at Hutton Construction." This statement is not speculative or ambiguous. Thus, the weight of medical opinion available at this time supports Mr. Parsley's contention that his shoulder injuries were primarily caused by his work.

Hutton also argued that Dr. Landsberg's opinion was defective in that he failed to "consider all causes" as required by section 50-6-102(14)(C). This argument is unpersuasive. While it is true that Dr. Landsberg did not use the exact statutory phrase, there is no proof he failed to consider other causes, nor did Hutton offer proof of any other causes. In fact, Dr. Landsberg's report explicitly stated that Mr. Parsley reported he never had previous problems with either shoulder and denied "anything out of the workplace that might have brought this on."

Hutton also contends that Mr. Parsley's descriptions of his injury are so inconsistent that he cannot prove "an incident, or specific set of incidents, identifiable by time and place of occurrence." The Court recognizes that the medical records, especially those of NP Melton, contain a number of somewhat inconsistent descriptions of how long the symptoms had persisted. However, medical records are rarely infallible, and NP Melton's are so internally inconsistent as to be particularly problematic. This is not a case of a medical provider noting that a patient kept changing his history. Instead, some of the history simply changes from prior visits with no explanation or emphasis. As a result, the inconsistencies identified by Hutton are just as likely to be attributable to NP Melton's record-keeping as to any historical errors by Mr. Parsley. Without testimony from NP Melton, it is impossible to ascribe the variability of her records to Mr. Parsley. Moreover, a review of all Mr. Parsley's medical records shows a consistent description of the general development of symptoms – a problem with the right shoulder that resulted in a more symptomatic problem with the left shoulder.

Hutton's characterization of other "inconsistencies" is somewhat overstated. It argued that the orthopedic section of NP Melton's June 9 note indicated a normal exam, but overlooked the fact that, elsewhere in the same report, NP Melton noted Mr. Parsley's complaints of "upper back pain with left arm pain." This is consistent with her concern that the symptoms were indicative of a cardiac problem. Similarly, Hutton relied on the patient information forms Ms. Parsley filled out at Dr. Johns' office – forms that initially say the left-shoulder condition was not work-related, but then state it was an injury that

6

occurred at work.  Ms. Parsley testified that she filled out the form in this manner because the office personnel told her that Mr. Parsley's health insurance would not pay for the treatment if he said it was a work-related injury.  The Court found both Ms. Parsley and Mr. Parsley to be credible witnesses and her explanation to be reasonable.

Mr. and Ms. Parsley's credibility is also important in evaluating Hutton's suggestion that Mr. Parsley's job could not have caused the claimed injuries.  Both Mr. Elliott and Mr. Hall stated in their affidavits that Mr. Parsley's job "did not require him to lift, push, pull and tug heavy objects."  Mr. and Ms. Parsley testified credibly that, in fact, in order to keep the job site clear and ready for the next subcontractor, Mr. Parsley lifted and moved any number of materials almost every day.[3]  Further, the Court notes that saying the job "did not require him" to perform these activities is not the same as saying Mr. Parsley did not actually perform them in the course of his work for Hutton.

Based on the foregoing, Mr. Parsley appears likely to prevail at a hearing on the merits that his injury arose primarily out of and in the course and scope of his employment.

*Medical Benefits*

Having found Mr. Parsley is likely to prevail at a hearing on the merits, the Court must address his request for medical benefits.  Under the Workers' Compensation Law, "the employer or the employer's agent shall furnish, free of charge to the employee, such medical and surgical treatment . . . made reasonably necessary by accident[.]"  Tenn. Code Ann. § 50-6-204(a)(1)(A) (2016).  Further, when an employer initially fails to provide a panel of physicians from which an employee might choose a treating physician, then such employer cannot belatedly seek to control selection of the treating physician by the late provision of a panel.  *Lambert v. Famous Hospitality, Inc.,* 947 S.W.2d 852 (Tenn. 1997).  Mr. Parsley is therefore entitled to continuing treatment, including any reasonable and necessary surgery, for both shoulders with Dr. Johns as his authorized physician.

*Temporary Disability Benefits*

Mr. Parsley also seeks payment of temporary disability benefits.  An injured worker is eligible for temporary total disability (TTD) benefits if: (1) the worker became disabled from working due to a compensable injury; (2) there is a causal connection between the injury and the inability to work; and (3) the worker established the duration of the period of disability.  *Jones v. Crencor Leasing and Sales*, TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Dec. 11, 2015) (citing *Simpson v. Satterfield*, 564 S.W.2d 953, 955

---

[3] Ms. Parsley explained that she would often travel to the jobsite with Mr. Parsley and observed him performing these tasks.

(Tenn. 1978). The first record of a medical professional taking Mr. Parsley off work is NP Melton's note of July 5, when she said he should not work until he saw an orthopedic specialist. When Dr. Johns examined Mr. Parsley on July 26, he noted Mr. Parsley was "unable to work until 8/26/2016." NP Melton subsequently revised her restriction to keeping Mr. Parsley off work "until cleared by Ortho." Accordingly, Mr. Parsley appears likely to prove he is entitled to TTD benefits for the period of July 5, 2016, through the present.

The Court recognizes that Dr. Landsberg's statement that Mr. Parsley "would be totally disabled from construction work activities starting 6/28/16, unless they had a purely office job where he could perhaps answer the phone and do some desk work" suggests that Mr. Parsley might not be totally disabled. However, even if this were a correct interpretation of Dr. Landsberg's opinion, Mr. Parsley would still be entitled to temporary partial disability benefits (TPD).

TPD is a category of vocational disability available when the temporary disability is not total. *Id.; see also* Tenn. Code Ann. § 50-6-207(1)-(2) (2016). Specifically, "[t]emporary partial disability refers to the time, if any, during which the injured employee is able to resume some gainful employment but has not reached maximum recovery." *Id.,* (citing *Williams v. Saturn Corp.*, No. M2004-01215-WC-R3-CV, 2005 Tenn. LEXIS 1032, at *6 (Tenn. Workers' Comp. Panel Nov. 15, 2005)). Thus, in circumstances where the treating physician has released the injured worker to return to work with restrictions prior to maximum medical improvement, and the employer either (1) cannot return the employee to work within the restrictions or (2) cannot provide restricted work for a sufficient number of hours and/or at a rate of pay equal to or greater than the employee's average weekly wage on the date of injury, the injured worker may be eligible for temporary partial disability. *Id*.

Hutton's claim that it only temporarily laid off Mr. Parsley because of lack of work is neither believable nor determinative of this issue. The seminal fact is that Hutton did not return Mr. Parsley to work or offer to provide him with restricted work. As a result, Mr. Parsley appears likely to prove entitlement to TPD benefits in the alternative to his TTD claim.

Regardless of whether Mr. Parsley's temporary disability benefits are characterized as TTD or TPD, he is entitled to payment of past benefits for the period of July 5, 2016, through the date of this order. At the stipulated compensation rate of $800.00 per week, this constitutes thirty-nine weeks and four days of benefits, or $31,657.14.

**IT IS, THEREFORE, ORDERED** as follows:

8

1. Hutton shall provide Mr. Parsley with medical treatment made reasonably necessary by his shoulder injuries and in accordance with Tennessee Code Annotated section 50-6-204. Dr. Johns shall be designated the authorized treating physician.

2. Hutton shall pay Mr. Parsley temporary partial disability benefits in the amount of $31,657.14 for the period from July 5, 2016, through April 7, 2017.

3. Hutton or its workers' compensation carrier shall continue to pay Mr. Parsley temporary disability benefits in regular intervals until he becomes ineligible for those benefits by reaching maximum medical improvement, by returning to work at a wage equal to or greater than the pre-injury wage, or by release without restrictions by the authorized treating physician. Hutton's representative shall immediately notify the Bureau, Mr. Parsley, and Mr. Parsley's counsel of the intent to terminate temporary disability benefits by filing Form C-26, citing the basis for the termination.

4. This matter is set for a Scheduling Hearing on **May 25, 2017, at 9:00 a.m**. You must call 615-741-2112 or toll-free at 855-874-0473 to participate. Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).

5. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2016). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

6. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED this the 10th day of April, 2017.**

_____
**Judge Dale Tipps**
**Court of Workers' Compensation Claims**

**APPENDIX**

Exhibits:
1. Affidavit of Ricky Parsley
2. Affidavit of Trey Hall
3. Affidavit of Matt Elliot
4. Indexed medical records
5. Collective agreed exhibits
6. Separation Notice dated August 29, 2016

Technical record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order Granting Benefits was sent to the following recipients by the following methods of service on this the 10th day of April, 2017.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|------|----------------|------------------|---------|------------|-----------|---------------|
| R. Steven Waldron, Esq., Employee's Attorney | | | | | X | arlenesmith@comcast.net |
| Emil L. "Chip" Storey, Esq., Employer's Attorney | | | | | X | cstorey@travelers.com |

_____
**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**