IN THE SUPREME COURT OF TENNESSEE
AT JACKSON



**FILED**

**December 4, 2000**

**Cecil Crowson, Jr.**
Appellate Court Clerk

| | | |
|---|---|---|
| DEBRA MICHELLE LAMBERT, | ) | FOR PUBLICATION |
| | ) | **Filed: June 2, 1997** |
| Plaintiff-Appellee, | ) | |
| | ) | Hon. Wyeth Chandler, |
| v. | ) | Judge |
| | ) | |
| FAMOUS HOSPITALITY, INC., | ) | Shelby Circuit |
| a/k/a A.S. HOSPITALITY a/k/a | ) | |
| M W M DEXTER, INC. and | ) | No. 02S01-9511-CV-00112 |
| AMERICAN MOTORIST | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendants-Appellants. | ) | |

For Plaintiff-Appellee:

Joseph Michael Cook
Memphis, TN

For Defendants-Appellants:

Carol Mills Hayden
Memphis, TN

# OPINION

JUDGMENT OF TRIAL COURT
AFFIRMED IN PART, REVERSED
IN PART, AND REMANDED.

DROWOTA, J.

In this workers' compensation action, the employer, Famous Hospitality, Inc., defendant-appellant, has appealed from a judgment of the Circuit Court of Shelby County finding that the employee, Debra Lambert, plaintiff-appellee, sustained a 60 percent permanent impairment to the whole body due to a work-related shoulder injury. The trial court also directed the employer to pay various medical and litigation related expenses incurred by the employee, but did not require the employer to pay for future medical treatment by doctors that had been selected by the employee and who had treated her before trial. The Special Workers' Compensation Appeals Panel, upon reference for findings of fact and conclusions of law pursuant to Tenn. Code Ann. § 50-6-225(e)(5), affirmed the trial court. Thereafter, the employer filed a motion for full Court review of the Panel's decision pursuant to Tenn. Code Ann. §50-6-225(e)(5)(B). We granted the motion to determine whether the employee should have been authorized to seek future medical treatment, at the employer's expense, from doctors selected by her who had treated her injuries. After carefully examining the record before us and considering the relevant authorities, we affirm the trial court's judgment except to the extent that the judgment does not authorize future medical treatment by the employee's treating physicians at the employer's expense.

The employee was 28 years old at the time of trial and possessed a high school diploma. She has completed one year of college. Her prior work experience consisted of working as a gas station attendant, convenient store worker, cashier, and performing heavy factory work. The employee had worked for the employer in this case, a printing company, for approximately nine months as a machine operator when, on May 25, 1992, she injured her left shoulder as she was pulling a dolly out from under some heavy boxes. The employee immediately reported the injury to her supervisor. According to the employee, the supervisor responded with laughter and said "you'll be alright."

Although the employee promptly reported her injury to the employer, the

2

employer did not provide the employee with a list of three physicians as required by Tenn. Code Ann. § 50-6-204(a)(4) from which she could select for medical treatment. Accordingly, the employee consulted the employer's group medical insurance handbook and selected Dr. Dan Halford, who treated her shoulder injury conservatively and then referred her to Dr. E. B. Wilkinson of the Memphis Orthopedic Group. Dr. Wilkinson also treated the employee's shoulder injury conservatively. He then sent her to another physician, Dr. Mark Harriman, because she was not improving. At the time the employee began seeing Dr. Harriman, an orthopedic surgeon, she was having difficulty moving her left shoulder and was unable to lift her left arm. Dr. Harriman performed corrective surgery on the employee's left shoulder, and subsequently performed a second surgery to remove scar tissue. Dr. Harriman discharged the employee after she underwent several weeks of physical therapy. Although she continued to complain of severe pain and had considerable difficulty lifting, Dr. Harriman believed that there was nothing more he could do for her. He concluded that the employee had sustained a 7 percent permanent anatomical impairment to the body as a whole. The employer paid all medical costs associated with the care and treatment of the employee rendered by Doctors Halford, Wilkinson, and Harriman.

After her release by Dr. Harriman, the employee was still having considerable problems with her left shoulder, arm and hand. On July 13, 1993, she sought treatment from Dr. Tewfik Rizk, who specializes in chronic shoulder disorders. Dr. Rizk recommended a series of tests, but the employer refused to pay for them. When the tests were complete in March, 1994, at the employee's expense, they showed that she had thoracic outlet syndrome. Dr. Rizk described thoracic outlet syndrome as a compression of the nerves and arteries from the neck leading to the shoulder. He testified that this condition was caused by the employee's work-related accident on May 25, 1992. Dr. Rizk then referred the employee to Dr. Jacob Rosensweig for consultation. Dr. Rosensweig, a cardiovascular and thoracic surgeon, confirmed the diagnosis of thoracic outlet syndrome and performed

3

corrective surgery. Following this surgery, the employee developed "reflex sympathetic dystrophy," a complication of surgery affecting the nervous system. Dr. Rizk prescribed medication and recommended nerve blocks which the employee was unable to afford. He assessed a 36 percent permanent partial impairment to the whole body, and opined that one third of patients with the employee's diagnosis never regain the use of their hand. Another one third of patients have pain, numbness and a burning sensation "for years and years and years." Dr. Rizk also opined that the employee might need further surgery and was limited to finding work requiring use of only one arm. He stated that the employee was still in need of medical care.

At trial, the court found that the employee had sustained a 60 percent permanent vocational disability to the body as a whole. Also, the court directed the employer to pay most of the employee's expenses associated with her treatment under Dr. Rizk and Dr. Rosensweig. However, the court did not require the employer to pay for future treatment by either of these physicians. Although the trial judge required the employer to provide the employee with a list of physicians from which the employee could choose future treatment, neither Dr. Rizk nor Dr. Rosensweig was on this list. The court's order stated in part that "if for any reason the services of any such doctor [on the list] should prove unsatisfactory, [the employee] shall have the right to petition the court for further review of her future medical care and management." The Special Workers' Compensation Appeals Panel affirmed the trial court's ruling. We have carefully considered and agree with the resolution of all issues made by the trial court and Special Panel, except for the one dealing with the employee's continued treatment by Doctors Rizk and Rosensweig.

The only meritorious issue before us is whether the employee is entitled to reimbursement for post-trial medical expenses for continued treatment by Doctors Rizk and Rosensweig. The pertinent statute, Tenn. Code Ann. § 50-6-204(a)(4), states that "[t]he injured employee shall accept the medical benefits afforded

4

hereunder; provided, that the employer shall designate a group of three (3) or more reputable physicians or surgeons not associated together in practice . . . from which the injured employee shall have the privilege of selecting the operating surgeon or the attending physician . . . ." Tenn. Code Ann. § 50-6-204(a)(4). This statute plainly gives an employer the right to designate three physicians from which the employee is entitled to make a final selection. However, once an employee has "justifiably engaged a doctor on his own initiative, a belated attempt by the employer to offer a doctor chosen by the employer will not cut off the right of the employee to continue with the employee's doctor." Goodman v. Oliver Springs Mining Co., Inc., 595 S.W.2d 805, 808 (Tenn. 1980) (quoting 2 Larson, Workers' Compensation Law, Section 61.12(d)(3) (1992)).

In this case, the employer did not provide the employee with the list of doctors as required by Tenn. Code Ann. § 50-6-204(a)(4) until the trial. (And as noted above, one of the physicians on the list was Dr. Harriman, who had already released the employee because he could do nothing more for her.) Having largely lost control of the employee's medical care by failing to provide the list of physicians as required by Tenn. Code Ann. § 50-6-204(a)(4), the employer may not now seek to regain control by its belated attempt at compliance. This conclusion is supported by our decision in Goodman v. Oliver Springs Mining Co, Inc., 595 S.W.2d 805 (Tenn. 1980). In that case, we held an employer liable for continuing medical expenses incurred by the employee after trial due to the employer's failure to comply with Tenn. Code Ann. § 50-6-204(a)(4). We explained that

> [t]he defendants have asserted no basis for their desire that the plaintiff change physicians other than their contention that it is their statutory privilege. In fact, a change in physicians would only cause the defendants to suffer unnecessary expense and cause the plaintiff to suffer additional hardship. Therefore, the only justification that we can perceive for the defendant's conduct is their unwillingness to pay the plaintiff's continuing medical expenses.

Goodman, 595 S.W.2d at 808-809. The same can be said of the case at bar. Accordingly, we hold that the employee justifiably sought treatment from Doctors Rizk

5

and Rosensweig in light of the employer's failure to comply with Tenn. Code Ann. § 50-6-204(a)(4). Requiring her to change doctors after lengthy and intensive treatment by these physicians - most notably Dr. Rizk - would place an unnecessary burden upon her that we are not prepared to impose. We thus conclude that the employer is liable for the post-trial medical expenses of the employee resulting from her continued treatment by Doctors Rizk and Rosensweig.

6

For the foregoing reasons, the judgment of the trial court is affirmed in part, reversed in part, and the case remanded for any further proceedings which may be necessary. Costs on appeal are taxed to the defendants-appellants.

_____
Frank F. Drowota, III
Justice

Concur:

Birch, C.J.,
Holder, Anderson, JJ.,

Reid, J., Not Participating