FILED

May 19, 2017

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time 1:12 PM



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MEMPHIS

| | | |
|---|---|---|
| SIDNEY GLASS,<br>    Employee,<br>v.<br>FORD CONSTRUCTION CO.,<br>    Employer,<br>And<br>TWIN CITY FIRE INS. CO.,<br>    Insurance Carrier. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Docket No. 2015-08-0638<br><br>State File No. 75957-2015<br><br>Judge Amber E. Luttrell |

---

## EXPEDITED HEARING ORDER GRANTING MEDICAL BENEFITS

---

This matter came before the undersigned Worker's Compensation Judge on April 25, 2017, upon the second Request for Expedited Hearing filed by Mr. Glass. The present focus of this case is whether Mr. Glass is entitled to medical benefits for his alleged back injury.[1] The central legal issue is whether Mr. Glass is likely to establish at a hearing on the merits he sustained an injury arising out of and in the course and scope of his employment. For the reasons set forth below, the Court holds Mr. Glass is likely to meet this burden and is thus entitled to the requested benefits.

### History of Claim

The parties' testimony and exhibits established the following facts at the hearing.[2] Mr. Glass, ninth-grade educated, worked almost exclusively in the construction field. He

---

[1] Mr. Glass also checked entitlement to temporary disability benefits as an issue on the Dispute Certification Notice. However, Mr. Glass offered limited proof on the issue, and the parties offered no argument on the issue at the hearing. Therefore, the Court considers the request waived at this time, but Mr. Glass may raise it as an issue at a later date.

[2] In determining this claim, the Court takes judicial notice of testimony heard at the prior in-person Expedited Hearing on March 2, 2016. *See Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 457 n.1 (Tenn. 2012), holding, "we are permitted to take judicial notice of the facts from earlier proceedings in the same action." The parties also agreed to the Court's consideration of Mr. Glass' prior testimony and offered the transcript of his prior testimony into the technical record designated as T.R. 6.

1

worked for Ford Construction ("Ford") beginning in early 2013 on a concrete crew, which involved pouring concrete on sidewalks and curbs, "pushing and pulling concrete, leveling it out, brooming it, forming it up, driving stakes, and so forth."

On September 4, 2015, Ford moved Mr. Glass to a different job on the asphalt crew to lay blacktop on a new road. He alleged an injury to his back arising out of his work activities that day. Mr. Glass testified he performed several jobs that day. He drove a backhoe, walked behind the paver, and used a shovel and sledgehammer. Mr. Glass explained that a truck full of asphalt material dumped chunks of asphalt into the paving machine that were too large to go through the paver. Consequently, Mr. Glass had to pull heavy asphalt chunks out of the paver with a shovel and use a sledgehammer to "bust them up." Shortly after getting off work, Mr. Glass felt tightness in his upper left buttocks, but did not think it was serious until his symptoms worsened over the weekend. He went to the emergency room early Monday morning complaining of severe pain in his left leg and low back radiating to the calf. He advised the symptoms began on Friday.[3] Mr. Glass testified that on the following day, Tuesday, he called his supervisor, Nick Norris, and told him he hurt his leg and would not be at work, but Mr. Norris did nothing for him.[4]

Mr. Glass sought follow-up treatment from his primary care physician at Ripley Medical Clinic. He told Nurse Practitioner (NP) Patsy Crihfield he worked in construction but did "not remember any event or injury precipitating his left low back left leg pain last week." NP Crihfield took Mr. Glass off work for the rest of the week and noted she would consider a "neuro" referral. At his next visit, NP Bradley Harrell ordered an MRI, placed him on light-duty, and referred him to a neurosurgeon. Mr. Glass subsequently returned to the clinic on September 14, still complaining of low back pain radiating down his left leg. He saw NP Christy Tipton and advised her of his work for a construction company "shoveling all day long," but denied an injury "that he knows of."

According to the affidavit of Ford employee Lisa Keeling, Mr. Glass contacted her on September 15, and "wanted to know whether his insurance through the company would pay for an MRI." She advised him it would not since his deductible had not been met. Ford's safety director, Collie Berry, stated in his affidavit that Mr. Glass contacted him on September 15, and reported a work-related injury sustained on September 4, which was his first notice of Mr. Glass' work injury. Mr. Glass also testified he told Mr. Berry he thought he hurt his back swinging the sledgehammer.

Following Mr. Glass' report of injury, Mr. Berry authorized an appointment for Mr. Glass with Dr. Mark Harriman, an orthopedic surgeon, on September 16. Mr. Berry

---

[3] The Court notes the majority of the handwriting on the ER record is illegible.

[4] The Court understood Mr. Glass to say Monday was Labor Day and he was off work. He called his supervisor on Tuesday, his next scheduled day to work.

drove him to the appointment. Dr. Harriman's note indicated Mr. Glass complained of lumbar and left buttock pain resulting from "lifting, pulling, pushing, and unknown/unsure." Under the "Assessment and plan" section of Dr. Harriman's record, it reads "work place accident." Dr. Harriman ordered an MRI and diagnosed radicular lumbar pain likely due to an L5 S1 lumbar herniation on the left.

Mr. Berry requested Mr. Glass undergo the MRI the same day at Memphis Orthopedic, which required they wait several hours for the MRI appointment. While they waited in Mr. Berry's truck, Mr. Berry gave Mr. Glass documents to sign, including a panel of physicians that included Dr. Harriman. Mr. Glass indicated he did not know what he signed because he was in severe pain. According to the MRI report, Mr. Glass provided a history of "low back pain radiating down left leg while swinging a sledge hammer 9/04/15. Evaluate for herniated disc." The MRI study revealed multiple abnormal findings. On September 18, 2015, Ford denied Mr. Glass' claim. The Notice of Denial indicated the basis for denial was "no accident arising out of employment."

Thereafter, Mr. Glass continued treatment at Ripley Medical Center. He advised NP Tipton on September 21, that he had been "doing this job shoveling for several years but the pain did not start until the fourth." The providers at Ripley Medical subsequently referred Mr. Glass to Dr. Todd Fountain at Semmes-Murphy Clinic. On September 28, Dr. Fountain noted in his record that Mr. Glass reported he began experiencing pain on September 4:

> He works shoveling asphalt for a living and stated that during the afternoon that continued to increase and then by the evening hours, he had severe pain extending from his back through his left lateral hip and buttock, left posterior thigh, as well as the lateral leg beyond the knee to the anterior aspect dorsum of his left foot.

Dr. Fountain examined Mr. Glass, reviewed his MRI study, diagnosed stenosis at L5 and a disk herniation with nerve root compression at L4, and recommended surgery.

Dr. Fountain drafted a letter setting forth his medical causation opinion. Dr. Fountain first stated Mr. Glass requires surgical decompression for the L4 and L5 nerve roots. Upon review of the available record, he concluded,

> Mr. Glass sustained the injuries to his lumbar spine outlined above while in the course and copy of his employment with Ford Construction on September 4, 2015. It is my opinion, within a reasonable degree of medical certainty, that the shoveling of asphalt and busting up asphalt with a sledge hammer is more than not the primary cause of the back injuries outlined above.

3

Mr. Glass has not worked since Ford terminated his employment on October 12, 2015, due to a positive drug screen for methadone. He testified he was enrolled in a methadone clinic for two years after developing an addiction to prescription pain medication and stated Ford knew about his enrollment. According to Mr. Glass, he became addicted to medication prescribed by Christian Family Medical for boils.

At the hearing, Mr. Glass contended his back injury arose out of his work activities on September 4, specifically shoveling and using the sledgehammer to bust up the asphalt. He contended he was honest with medical providers that he could not recall one acute event that caused the injury; however, he advised Mr. Berry, Dr. Harriman, and Dr. Fountain about working with the sledgehammer on September 4. Mr. Glass requested medical benefits for his back injury with Dr. Fountain as his treating physician. Ford denied Mr. Glass is entitled to any workers' compensation benefits. It contended he is not likely to establish a specific injury at a hearing on the merits. Ford's counsel also asserted as a defense in closing argument that Mr. Glass was terminated for "violation of company drug free workplace policy" based upon a positive drug screen for methadone on September 16.

Mr. Glass initially filed a Request for Expedited Hearing on December 23, 2015. Judge Jim Umsted heard the request and denied benefits, holding Mr. Glass failed to identify a specific incident that caused his injury and to provide an expert medical opinion causally relating Mr. Glass' condition to the alleged work incident. Mr. Glass subsequently obtained additional medical evidence and filed a second Request for Expedited Hearing on January 17, 2017, which is now before the Court.

### Findings of Fact and Conclusions of Law

To be compensable, Mr. Glass must show his alleged injury arose primarily out of and in the course and scope of his employment and that it was caused by an incident, or specific set of incidents, identifiable by time and place of occurrence. Further, he must show, "to a reasonable degree of medical certainty that [his alleged work injury] contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14) (2016).

However, because this case is in a posture of an Expedited Hearing, Mr. Glass need not prove every element of his claim by a preponderance of the evidence in order to obtain relief. *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015). Instead, he must come forward with sufficient evidence from which this Court might determine he is likely to prevail at a hearing on the merits. *Id.*; Tenn. Code Ann. § 50-6-239(d)(1).

4

*Analysis*

The Court first notes that Ford presented no testimony or other proof disputing Mr. Glass' description of the events of September 4 or his symptoms that developed that day. Rather, Ford argued Mr. Glass did not sustain a work injury on September 4 because he candidly testified his symptoms did not develop immediately while working, but instead began shortly after he returned home from work that day. Further, he could not point to an acute event when he initially sought treatment. Thus, Ford contended, these facts preclude Mr. Glass from entitlement to benefits. The Court disagrees.

The Court observed Mr. Glass' demeanor during the hearing and finds him credible. The Court finds Mr. Glass performed a different job on September 4, and used a shovel to remove heavy asphalt from the paving machine and a sledgehammer to bust it up. Shortly after leaving work, Mr. Glass experienced pain in his upper left buttock that progressively worsened over the weekend. While the emergency room record did not appear to list a specific injury, the record indicated Mr. Glass reported his symptoms began on Friday, which is consistent with the injury date. Moreover, it was undisputed that within eleven days of the injury date, Mr. Glass reported to his safety manager, Mr. Berry, that he believed the work with the sledgehammer on September 4 caused his pain.

The Court further finds Dr. Harriman noted Mr. Glass' injury resulted from lifting, pulling, and pushing, while the MRI report from Dr. Harriman's office was more specific and stated he "developed low back pain radiating down left leg while swinging a sledgehammer on September 4." In sum, the Court finds Mr. Berry's affidavit and the totality of the medical proof corroborate Mr. Glass' testimony. Thus, the Court holds Mr. Glass came forward with sufficient evidence from which this Court concludes he is likely to prevail at a hearing on the merits in establishing an injury caused by a specific set of incidents on September 4, 2015.[5]

Having so found, the Court turns to whether Mr. Glass came forward with sufficient medical evidence to prove the injury is the primary cause of his symptoms and need for medical treatment. The Court holds Mr. Glass also met this burden. Mr. Glass offered a causation letter from Dr. Fountain wherein Dr. Fountain concluded, within a reasonable degree of medical certainty, that Mr. Glass' shoveling of asphalt and busting up asphalt with a sledgehammer was "more than not the primary cause of his back injuries" noted in his letter. Moreover, Dr. Fountain concluded Mr. Glass requires surgery for his back injuries. Based upon Dr. Fountain's opinion, the Court holds Mr. Glass came forward with sufficient medical proof establishing, "to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing the . . . disablement

---

[5] The Court notes Ford alluded to a possible intoxication defense, for the first time, in its closing argument at the hearing based upon Mr. Glass' positive drug screen on September 16. Ford offered no proof at either hearing of its status as a Tennessee Drug Free Workplace, and the Court notes Ford did not raise any such defense in the Dispute Certification Notice filed on December 16, 2015. Thus, the Court declines to consider this defense.

or need for medical treatment, considering all causes." Tenn. Code Ann. §50-6-102(14)(C).

*Medical Benefits*

Having found Mr. Glass is likely to prevail at a hearing on the merits, the Court must address his request for medical benefits. Under the Workers' Compensation Law, "the employer or the employer's agent shall furnish, free of charge to the employee, such medical and surgical treatment . . . made reasonably necessary by accident[.]" Tenn. Code Ann. § 50-6-204(a)(1)(A) (2016). Further, when an employer initially fails to provide a panel of physicians from which an employee might choose a treating physician, then such employer cannot belatedly seek to control selection of the treating physician by the late provision of a panel. *Lambert v. Famous Hospitality, Inc.,* 947 S.W.2d 852 (Tenn. 1997).

Here, Ford asserted it gave Mr. Glass a panel on September 16, and if the Court awarded benefits, Mr. Glass should be required to see a panel physician. Based on the undisputed testimony of Mr. Glass, the Court disagrees and finds Mr. Glass did not actually select Dr. Harriman from a panel. The Court accepts Mr. Glass' testimony that he was in such pain after his visit with Dr. Harriman that he was unaware he even signed a panel in the stack of documents Mr. Berry asked him to sign. Moreover, the Court notes Ford's panel of physicians offered into evidence is illegible; thus the Court cannot determine if Ford attempted to offer a panel of surgeons to treat Mr. Glass' herniated lumbar disc. The records indicated Dr. Fountain conducted a thorough evaluation and concluded that Mr. Glass requires a surgical decompression of the L4 and L5 nerve roots. Ford did not dispute Dr. Fountain's qualifications. For these reasons, the Court holds Mr. Glass is entitled to continuing treatment for his back injury, including any reasonable and necessary surgery, with Dr. Fountain as his authorized physician.

**IT IS, THEREFORE, ORDERED** as follows:

1. Ford Construction Co. shall provide Mr. Glass with medical treatment made reasonably necessary by his back injury and in accordance with Tennessee Code Annotated section 50-6-204 (2016). Dr. Fountain shall be designated the authorized treating physician.

2. **This matter is set for a Status Hearing on July 24, 2017, at 10:00 a.m. Central Time. You must call toll-free 855-543-5039 to participate in the hearing.**

3. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2016). The Insurer or Self-Insured**

**Employer must submit confirmation of compliance with this Order to the Bureau by email to** WCCompliance.Program@tn.gov **no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

Dated this the 19th day of May, 2017.

**JUDGE AMBER E. LUTTRELL**
**Court of Workers' Compensation Claims**

## APPENDIX

Exhibits:
1. Affidavit of Sidney Glass
2. Affidavit of Lisa Keeling
3. Affidavit of Collie Berry
4. First Report of Injury
5. Agreement Between Employer/Employee Choice of Physician
6. Notice of Denial of Claim for Compensation
7. Wage Statement
8. Separation Notice
9. Drug Test Result
10. Job description
11. Ripley Medical Clinic medical bill
12. Medical Records (collective)
13. Semmes-Murphey Clinic medical records dated 9/28/2015
14. Dr. Todd Fountain's medical records and causation letter (collective)

Technical record:[6]
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing filed December 12, 2015
4. Expedited Hearing Order Denying Request for Benefits
5. Request for Expedited Hearing filed January 17, 2017

---

[6] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

7

6. Transcript of Expedited Hearing of March 2, 2016
7. Pre-Hearing Statement for Employee

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Order was sent to the following recipients by the following methods of service on this the __19th__ day of May, 2017.

| Name | First Class Mail | Via Email | Service sent to: |
|---|---|---|---|
| Jeff Boyd, Esq., Attorney for Employee | | X | jboyd@borenandboyd.com sbland@borenandboyd.com |
| Matthew W. Willis, Esq., Attorney for Employer | | X | matt@ashleyarnold.com |

Penny Shrum, **Clerk of Court**
**Court of Workers' Compensation Claims**

8