FILED
**Dec 27, 2018**
**12:18 PM(CT)**
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MEMPHIS

| | | |
|---|---|---|
| **RENITA HAMER,** | ) | **Docket No. 2017-08-1377** |
| **Employee,** | ) | |
| **v.** | ) | **State File No. 94424-2017** |
| **UNITED TECHNOLOGIES CORP.,** | ) | |
| **Employer.** | ) | **Judge Dale Tipps** |

---

### EXPEDITED HEARING ORDER GRANTING BENEFITS

---

This matter came before the Court on December 12, 2018, for an Expedited Hearing focusing on whether Ms. Hamer is entitled to medical benefits. The central legal issues are whether Ms. Hamer gave proper notice of her injury and, if so, whether she is likely to establish at a hearing on the merits that her injury arose primarily out of and in the course and scope of her employment. For the reasons below, the Court holds Ms. Hamer is entitled to the requested medical benefits.

### History of Claim

Ms. Hamer began working for United Technologies Corporation (UTC) at its Carrier air conditioner plant in April 2016. After a couple of months, she left UTC on leave due to her father's death. When Ms. Hamer returned to work on April 11, 2017, her first job involved lifting air conditioner bases off the line and placing them on a rack. She complained to her union about the heavy nature of that job, and UTC changed her work assignment after two or three weeks. Ms. Hamer began working on a production line, sometimes using pliers to pull plugs out of units and installing screws with electric drills.

While using the electric drills one Saturday in May 2017, Ms. Hamer's hands began to tingle and hurt. She initially thought she was having a stroke. She notified her supervisor, who took her off work the rest of the day, and Ms. Hamer went to her personal physician, Dr. Dwayne Findlay, the following Tuesday, May 23.[1]

---

[1] Ms. Hamer tried to go to Dr. Findlay on Monday, but he could not see her because of insurance

Dr. Findlay assessed carpal tunnel syndrome (CTS) of the right wrist and gave Ms. Hamer a prednisone injection. Dr. Findlay completed part of a Leave of Absence form and responded "No" to the question, "Is injury or sickness work related?" Ms. Hamer filled out a different part of the form and also indicated the injury was not work related. Dr. Findlay ordered a wrist splint and referred Ms. Hamer to Dr. Norfleet Thompson, an orthopedic surgeon.

Based on Dr. Findlay's referral, Ms. Hamer saw Dr. Thompson on May 25. On her health history form, she reported tingling and numbness in her right hand for "about two weeks." Ms. Hamer also checked "No" in answer to the query, "Work Related?" After an EMG test a few days later, Dr. Thompson diagnosed bilateral CTS and recommended release surgery.

After seeing Dr. Thompson, Ms. Hamer returned to work, and she often sought treatment for her hands and arms during her shift at UTC's on-site nursing station. There, she also spoke with Dr. Lloyd Robinson. Ms. Hamer testified she told Dr. Robinson that she thought her symptoms were caused by her use of the drills and pliers at work. Dr. Robinson's notes showed that Ms. Hamer reported her CTS diagnosis to him on June 22. She also told him that her union representative instructed her to say that her injury was not work related.

UTC terminated Ms. Hamer for absenteeism on to July 18. She admitted during the hearing that she did not report her injury as work-related before that date.

Several months later, Ms. Hamer's attorney requested a causation opinion from Dr. Thompson. He responded on November 22:

> I think there is a reasonable degree of medical certainty that her job did contribute substantially to the development of carpal tunnel syndrome in this case. I even think the condition developed primarily out of her work. . . [Her symptoms] arose primarily in the context of her work at Carrier.

UTC then provided a panel of physicians, and Ms. Hamer selected Dr. Jeffrey Dlabach in January 2018. Dr. Dlabach issued an "Independent Medical Evaluation" in February. He agreed with the CTS diagnosis but said it was preexisting and not related to her work activity. Based on Dr. Dlabach's opinion, UTC denied Ms. Hamer's claim.

Both Dr. Thompson and Dr. Dlabach gave depositions in this case. Dr. Dlabach maintained that Ms. Hamer's work did not cause her CTS. He testified that Ms. Hamer's EMG findings were too severe to be caused by her relatively short period of work at

---

problems. She reported the problem to someone at UTC, who told her to seek help from the union.

UTC. He felt that, while her symptoms might have been aggravated by her work, the CTS must have been developing over several years. On cross-examination, Dr. Dlabach admitted that Ms. Hamer's symptoms did not appear until she performed her job. As a result, he agreed that her job aggravated the CTS and caused her symptoms.

Dr. Thompson confirmed the opinions contained in his prior letter and testified that Ms. Hamer's need for surgery arose primarily out of her work at UTC. On cross-examination, he admitted he did not know how long Ms. Hamer had worked there. Dr. Thompson also did not know her exact job duties or the tools she used but explained that it wasn't necessary to know every detail of her work to make his causation assessment. He also felt that a major factor in his assessment was that "she didn't have symptoms before, and she has symptoms now."

UTC's attorney questioned Dr. Thompson about the fact that his part of Ms. Hamer's disability application indicated that her injury was not work-related. He explained that at the time he completed the form, he was still in the process of gathering information and test results, and diagnosing the condition.

Ms. Hamer testified that she never had problems with her hands before May 2017. She stated that she still suffers from pain and tingling, as well as weakness in her grip. She asked the Court to order UTC to provide treatment, including the surgery recommended by Dr. Thompson.

UTC contended that Ms. Hamer's claim is barred by her failure to provide proper notice. It also argued that, even if her notice were legally sufficient, Ms. Hamer failed to meet her burden of proving that that her CTS arose primarily out of and in the course and scope of her employment. It relied on Dr. Dlabach's opinion and argued that his opinion is presumed correct because he is an authorized treating physician. UTC also maintained that Dr. Thompson's opinion was unreliable because he had no actual knowledge of Ms. Hamer's job duties or her period of employment. It further argued that the Court should exclude Dr. Thompson's causation testimony because he gave contradictory causation opinions. For these reasons, it asked the Court to deny her request.

**Findings of Fact and Conclusions of Law**

*Standard applied*

Ms. Hamer need not prove every element of her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. Instead, she must come forward with sufficient evidence demonstrating that she is likely to prevail at a hearing on the merits. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2018); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

3

*Notice*

Tennessee Code Annotated section 50-6-201(b) requires an injured employee to give written notice of an injury within fifteen days after the employee:

> (1) Knows or reasonably should know that the employee has suffered a work-related injury that has resulted in permanent physical impairment; or
> (2) Is rendered unable to continue to perform the employee's normal work activities as the result of the work-related injury and the employee knows or reasonably should know that the injury was caused by work-related activities.

When the employer raises lack of notice as a defense, the burden is on the employee to show either the employer had actual notice, that she provided notice, or that her failure to give notice was reasonable under the circumstances. *Hosford v. Red Rover Preschool*, 2014 TN Wrk. Comp. App. Bd. LEXIS 1, at *15 (Oct. 2, 2014). Our Appeals Board explained the notice requirement "exists so that an employer will have an opportunity to make a timely investigation of the facts while still readily accessible, and to enable the employer to provide timely and proper treatment for an injured employee." *Id*. Guided by this authority, the Court must determine whether Ms. Hamer rebutted UTC's notice defense.

The Court first examines whether Ms. Hamer provided notice to UTC within fifteen days of when she knew or reasonably should have known that she had suffered a work-related injury that resulted in permanent physical impairment. "Employee's mere suspicion as to the cause of her condition, without more, is insufficient in this case to constitute knowledge of a causal connection between her [CTS] and her work activities." *Maples v. Fed'l-Mogul Corp.*, 2016 TN Wrk. Comp. App. Bd. LEXIS 8, at *23-24 (Feb. 17, 2016). Further, as both Dr. Findlay and Dr. Thompson initially indicated her injury was not work-related, the Court finds that Ms. Hamer did not know or reasonably should have known her CTS was a work-related injury until after Dr. Thompson issued his November 22 causation letter.

The question then is whether Ms. Hamer gave written notice within fifteen days of learning Dr. Thompson's opinion. She filed her Petition for Benefit Determination (PBD) on December 11 – nineteen days after Dr. Thompson wrote his letter. However, the Court has no evidence to show when Ms. Hamer received the letter. Further, UTC presented no evidence as to when it received notice, much less whether it knew of her claim before its receipt of the PBD. Accordingly, the Court cannot find Ms. Hamer failed to provide timely notice.

Further, UTC presented no evidence of any prejudice to its ability to defend this

claim. Tennessee Code Annotated section 50-6-201(a)(3) provides that failure to give notice will not bar a claim unless the employer can show it was prejudiced by the lack of notice. In the absence of evidence on this issue, the Court cannot find Ms. Hamer's alleged failure to report the injury resulted in prejudice to UTC, such as a serious impediment to investigating the claim or providing treatment. Therefore, the Court holds that Ms. Hamer is likely to prevail at a hearing on the merits on the issue of notice.

*Causation*

To prove a compensable injury, Ms. Hamer must show that her CTS arose primarily out of and in the course and scope of her employment. To do so, she must show, "to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment, considering all causes." "Shown to a reasonable degree of medical certainty" means that, in the opinion of the treating physician, it is more likely than not considering all causes as opposed to speculation or possibility. *See* Tenn. Code Ann. § 50-6-102(14).

The relevant medical opinions in this case are those of Dr. Thompson and Dr. Dlabach.[2] Both doctors gave opinions as to the cause of Ms. Hamer's CTS. Dr. Thompson also addressed the cause of her symptoms. UTC contends that Dr. Dlabach's opinion is entitled to a presumption of correctness because he was an authorized treating physician. *See* Tenn. Code Ann. § 50-6-102(14)(E). Although Ms. Hamer selected him from a panel, Dr. Dlabach seemed unaware that he was her treating doctor. Instead, he testified, and his records confirm, that he saw her for an independent medical evaluation. Thus, the Court cannot find that Dr. Dlabach qualifies for the presumption of correctness. However, when weighing these conflicting medical opinions, the Court finds Dr. Dlabach's opinion more persuasive regarding the *cause* of Ms. Hamer's condition.

Specifically, the Court is persuaded by Dr. Dlabach's explanation that Ms. Hamer's CTS was a preexisting condition and could not have been caused by her three or four weeks of work. Therefore, the Court holds that Ms. Hamer appears unlikely to establish at a hearing on the merits that her CTS arose primarily out of her three to four weeks of line work.

However, the analysis does not end with this finding. Ms. Hamer may still be entitled to benefits if the work caused an aggravation of her CTS. To qualify for medical benefits at an interlocutory hearing, the Workers' Compensation Law allows an injured worker who alleges an aggravation of a preexisting condition to receive benefits if the aggravation arose primarily out of and in the course and scope of employment. *See* Tenn.

---

[2] Dr. Findlay checked "No" to indicate the condition was not work-related on the Leave of Absence form. However, he was not deposed, and the Court does not know how he reached this conclusion after seeing Ms. Hamer just once and before referring her to an orthopedist. Further, it does not address the issue of whether her work aggravated a preexisting condition.

Code Ann. § 50-6-102(14)(A). This must be shown "to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14)(C).

In this case, Ms. Hamer said she had no pain or other symptoms before she began her new job duties in May 2017. The Court notes that Ms. Hamer appeared steadfast, forthcoming, reasonable, and honest, which characteristics indicate reliability, according to the Tennessee Supreme Court. *See Kelly v. Kelly,* 445 S.W.3d 685, 694-695 (Tenn. 2014). The medical records support her description of the development of her symptoms.[3] The Court therefore finds Mr. Hamer credible and accepts her description of a progressive onset of symptoms while working at UTC.

Based on Ms. Hamer's history, Dr. Thompson stated that her "symptoms arose primarily in the context of her work." Dr. Dlabach agreed that these symptoms triggered the need for treatment of CTS, and he did not dispute Dr. Thompson's opinion as to the cause of Ms. Hamer's pain and numbness. Because Dr. Thompson's aggravation opinion is unrebutted, the Court holds that Ms. Hamer is likely to prevail at a hearing on the merits that her work at UTC was the primary cause of her need for treatment. Thus, under section 50-6-102(14)(A), she is likely to prove a compensable aggravation of her preexisting condition.

*Medical Benefits*

Having found Ms. Hamer is likely to prevail in establishing a compensable aggravation of her preexisting condition, the Court must address her request for medical benefits. Under the Workers' Compensation Law, "the employer or the employer's agent shall furnish, free of charge to the employee, such medical and surgical treatment . . . made reasonably necessary by accident[.]" Tenn. Code Ann. § 50-6-204(a)(1)(A). Further, when an employer initially fails to provide a panel of physicians from which an employee might choose a treating physician, then such employer cannot belatedly seek to control selection of the treating physician by the late provision of a panel. *Lambert v. Famous Hospitality, Inc.,* 947 S.W.2d 852 (Tenn. 1997).

Although UTC provided a panel, there is no evidence that it authorized treatment with Dr. Dlabach, her panel selection, but only retained him for an independent medical evaluation. Ms. Hamer is therefore entitled to continuing treatment, including any reasonable and necessary surgery, with Dr. Thompson as her authorized physician.

---

[3] Ms. Hamer's responses in her health history and disability applications are not fatal to her claim. As she is not a medical professional, her opinion as to the cause of her gradually-occurring symptoms is not particularly relevant. Further, the uncontroverted evidence indicates that her union representative advised her to respond in this manner.

**IT IS, THEREFORE, ORDERED** as follows:

1. United Technologies Corporation shall provide Ms. Hamer with medical treatment made reasonably necessary by her CTS in accordance with Tennessee Code Annotated section 50-6-204, including any reasonable and necessary surgery. Dr. Thompson is designated the authorized treating physician.

2. This matter is set for a Scheduling Hearing on February 26, 2019, at 9:00 a.m. The parties must call 615-741-2112 or toll-free at 855-874-0473 to participate. Failure to call in may result in a determination of the issues without the parties' participation. All conferences are set using Central Time.

3. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.

4. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email at WCCompliance.Program@tn.gov.

**ENTERED this the 27th day of December, 2018.**

*Dale Tipps*
_____

**Judge Dale Tipps**
**Court of Workers' Compensation Claims**

**APPENDIX**

Exhibits:
1. Affidavit of Renita Hamer
2. Indexed medical records
3. Deposition of Dr. Jeffrey Dlabach
4. Deposition of Dr. Norfleet Thompson
5. Notice of Denial
6. Choice of Physician form
7. UTC medical records
8. Request for Non-Industrial Medical Leave of Absence

9. Health Incident Data

Technical record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Employer's Expedited Hearing Memorandum
5. Employer's Supplemental Expedited Hearing Memorandum

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 27th day of December, 2018.

| Name | Certified Mail | Email | Service Sent To |
|------|----------------|-------|-----------------|
| Christopher Taylor, Employee's Attorney | | X | ctaylor@taylortoon.com |
| Garrett Estep, Employer's Attorney | | X | gestep@farris-law.com |

_____
**Penny Shrum, Court Clerk**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

8



<u>Expedited Hearing Order Right to Appeal</u>:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board.  To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed.  When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal.  You may request from the court clerk the audio recording of the hearing for a $25.00 fee.  If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal.  Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal.  The statement of the evidence must convey a complete and accurate account of the hearing.  The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board.  If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence.  The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement.  All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# EXPEDITED HEARING NOTICE OF APPEAL

Tennessee Division of Workers' Compensation
www.tn.gov/labor-wfd/wcomp.shtml
wc.courtclerk@tn.gov
1-800-332-2667

**Docket #:** _____

**State File #/YR:** _____

_____

**Employee**

v.

_____

**Employer**

## Notice

Notice is given that _____

[List name(s) of all appealing party(ies) on separate sheet if necessary]

appeals the order(s) of the Court of Workers' Compensation Claims at _____

_____ to the Workers' Compensation Appeals

Board. [List the date(s) the order(s) was filed in the court clerk's office]

**Judge**_____

## Statement of the Issues

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

## Additional Information

**Type of Case** [Check the most appropriate item]

☐ Temporary disability benefits
☐ Medical benefits for current injury
☐ Medical benefits under prior order issued by the Court

## List of Parties

**Appellant (Requesting Party):**_____ At Hearing: ☐Employer ☐Employee

Address:_____

Party's Phone:_____ Email:_____

Attorney's Name:_____ BPR#: _____

Attorney's Address:_____ Phone: _____

Attorney's City, State & Zip code:_____

Attorney's Email:_____

*** Attach an additional sheet for each additional Appellant ***

Employee Name: _____ SF#: _____ DOI: _____

**Appellee(s)**
**Appellee (Opposing Party):**_____At Hearing: ☐Employer ☐Employee

Appellee's Address: _____

Appellee's Phone: _____ Email:_____

Attorney's Name:_____ BPR#: _____

Attorney's Address:_____ Phone: _____

Attorney's City, State & Zip code: _____

Attorney's Email:_____

*** Attach an additional sheet for each additional Appellee ***

**CERTIFICATE OF SERVICE**

I,_____, certify that I have forwarded a true and exact copy of this
Expedited Hearing Notice of Appeal by First Class, United States Mail, postage prepaid, to all parties
and/or their attorneys in this case in accordance with Rule 0800-02-22.01(2) of the Tennessee Rules
of Board of Workers' Compensation Appeals on this the_____day of_____, 20___

[Signature of appellant or attorney for appellant]_____



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name: _____     2. Address: _____

3. Telephone Number: _____     4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____     Relationship: _____

_____     Relationship: _____

_____     Relationship: _____

_____     Relationship: _____

6. I am employed by: _____

    My employer's address is: _____

    My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning | _____ |
| SSI | $ _____ per month | beginning | _____ |
| Retirement | $ _____ per month | beginning | _____ |
| Disability | $ _____ per month | beginning | _____ |
| Unemployment | $ _____ per month | beginning | _____ |
| Worker's Comp. | $ _____ per month | beginning | _____ |
| Other | $ _____ per month | beginning | _____ |

9. My expenses are:

Rent/House Payment $ _____ per month     Medical/Dental  $ _____ per month

Groceries      $ _____ per month      Telephone      $ _____ per month

Electricity      $ _____ per month      School Supplies $ _____ per month

Water      $ _____ per month      Clothing      $ _____ per month

Gas      $ _____ per month      Child Care      $ _____ per month

Transportation   $ _____ per month      Child Support   $ _____ per month

Car      $_____ per month

Other      $ _____ per month (describe: _____ )

10. Assets:

Automobile      $ _____      (FMV) _____

Checking/Savings Acct. $ _____

House      $ _____      (FMV) _____

Other      $ _____      Describe: _____

11. My debts are:

Amount Owed            To Whom

_____      _____

_____      _____

_____      _____

_____      _____

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____
APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____
NOTARY PUBLIC

My Commission Expires: _____